FILED

2012 Aug-16  PM 01:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **BOBBY W. WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No.:  4:11-CV-1941-RDP** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF DECISION

Plaintiff Bobby Wayne Wilson brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the decision by the Commissioner of the Social Security Administration denying his applications for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the final decision of the Commissioner is due to be affirmed.

## I.       Proceedings Below

Plaintiff filed his applications for disability, DIB, and SSI benefits on May 14, 2007, alleging onset of disability as of October 31, 2006, as amended at the administrative hearing. (Tr. 45-46, 110-16). These claims were initially denied by the Social Security Administration on September 21, 2007. (Tr. 67-77). Plaintiff then requested and received a hearing before Administrative Law Judge Edward A. Snyder ("ALJ") on August 27, 2009. (Tr. 40-64, 78). In his decision dated September 15, 2009, the ALJ determined that Wilson had not been disabled within the meaning of §§ 216(i) and 223(d) of the Social Security Act (the "Act"). (Tr. 24). After

the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1, 10), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. 42 U.S.C. §§ 405(g), 1383(c).

Plaintiff was thirty-three years old at the time of the hearing. (Tr. 46). He did not complete his high school education and has not worked or applied for a job since October 31, 2006. (Tr. 143, 149). Plaintiff has previously worked as a painter and a compression molding machine operator. (Tr. 53-54, 144). He was in a car accident on August 18, 2004 in which he was ejected from the vehicle. Plaintiff was treated for a splenic rupture with shock, a closed head injury, a both–bone fracture in his left forearm, and damage to his left ankle among other injuries. (Tr. 180-216). Plaintiff claims that his current disabilities arose from this accident and include pain in moving and using his arms, inability to stay on his feet for more than two hours, and anxiety attacks when riding in a vehicle. (Tr. 143).

Plaintiff was originally treated for his injuries at Baptist Montclair Hospital. He was released on August 27, 2004 with no subsequent complications. (Tr. 180-81). During follow up visits in 2005, Plaintiff was found to have a full range of motion in his elbow and to only have mild soreness in the region of the fracture in his arm. (Tr. 225-26). Plaintiff was examined for disability purposes by Dr. Tenchavez on August 8, 2007. (Tr. 227). Dr. Tenchavez's diagnosis of Plaintiff was as follows: prior left Monteggia's fracture- status post open reduction internal fixation; history of radial nerve palsy; and status post splenectomy secondary to trauma. (Tr. 229). Dr. Tenchavez noted that Plaintiff was able to heel, toe, and tandem walk, that he could stoop and rise on his knees, and that the grip strength in his left hand was diminished to about 4/5 its normal capacity. (Tr. 229).

2

Plaintiff went to the hospital once in 2008 due to a fall. (Tr. 295). He had another fall in 2009 and returned for another hospital visit. (Tr. 319). During both of these visits, x-rays were taken that showed no definite fractures or soft tissue damage in the left forearm and only a subtle fracture and some soft tissue swelling in the left ankle. (Tr. 300, 301, 318, 321). Plaintiff also went to the hospital an additional four times in 2008 for treatment unrelated to his current impairments. During these visits he did not complain of pain or seek treatment related to his earlier injuries. (Tr. 262-81, 305-13). A physical residual functional capacity ("RFC") assessment was performed on Plaintiff by Angela Williamson on August 29, 2007. (Tr. 234). This RFC evaluation, which mirrors the assessments made by Dr. Tenchavez (Tr. 229), ultimately determined that Plaintiff was able to work at a light exertional level. (Tr. 235). The RFC also included some additional postural restrictions in light of Plaintiff's limitations. (Tr. 234-41). Ms. Williamson found that Plaintiff should never climb ropes, ladders, or scaffolds and that he was limited in both gross and fine manipulation. (Tr. 236-37).

Plaintiff has also undergone numerous mental and psychological evaluations. Plaintiff was evaluated by Dr. Rogers of the Homewood Vocational Rehabilitation Center on May 7, 2009. (Tr. 334). Dr. Rogers determined that Plaintiff's speech and conversation were spontaneous and normal, that Plaintiff possessed normal thought processes, that his judgment was unimpaired, and that he had a restrictive mood. (Tr. 336). Dr. Rogers also diagnosed Plaintiff with "pain disorder, depressive disorder, anxiety disorder, reading disorder, mathematics disorder, learning disorder, and disorder of written expression." (Tr. 337). He determined that Plaintiff's intelligence and social skills were both in the low average range. (Tr. 338).

3

Plaintiff's files were reviewed by Dr. Bentley and a consultative examination report was made on August 9, 2007. (Tr. 230-33). Dr. Bentley determined that Plaintiff suffered from recurrent major depression that was moderate to severe. (Tr. 232). He also noted that Plaintiff was alert and oriented and that he seemed reasonably motivated and cooperative. (Tr. 231-32). Andrea Nelson, a therapist at Homewood Vocational Rehab, also reviewed Plaintiff's records. (Tr. 343). Based on these records and her interactions with Plaintiff, Ms. Nelson determined that Plaintiff is not a candidate for employment. (Tr. 343). Ms. Nelson based this assessment on her experiences with Plaintiff, particularly the need to reschedule appointments because of his anxiety about riding in automobiles. (Tr. 343).

On August 30, 2007, Dr. Estock evaluated Plaintiff's records and filled out both a Psychiatric Review Technique form and a mental RFC assessment form. (Tr. 242-55, 256-59). Dr. Estock concurred with the previous findings concerning Plaintiff's depression, anxiety, and chronic pain. (Tr. 254). Dr. Estock determined that Plaintiff has moderate limitations in activities of daily living and maintaining concentration, persistence, or pace, and that he suffered mild difficulties in maintaining social functioning. (Tr. 252).

## II.    ALJ's Decision

The Social Security Act's general DIB program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. 42 U.S.C. § 423(a).  The Act's SSI program is separate and distinct from the DIB. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim

4

for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 (11th Cir. 1986). Claimants under DIB and SSI must provide "disability" within the meaning of the Act which defines disability in virtually identical language for both programs. 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.

> (1)     Is the person presently unemployed?
>
> (2)     Is the person's impairment(s) severe?
>
> (3)     Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>
> (4)     Is the person unable to perform his or her former occupation?
>
> (5)     Is the person unable to perform any other work within the economy?

42 C.F.R. §§ 404.1520, 416.920 (2010).

5

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of "disabled". A negative answer to any question, other than step three, leads to a determination of "not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests squarely on a claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant can establish a prima facie case of qualifying disability once he meets the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

Before performing the fourth and fifth steps, the ALJ must determine the claimant's residual functional capacity. *Id.* at 1238-39. The RFC is what the claimant is able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239-40.

In this case, the ALJ first determined that Plaintiff is not presently employed and has not engaged in substantial gainful employment since the alleged onset date of disability. (Tr. 17). The ALJ also determined that Plaintiff suffers from the severe impairments of major depressive disorder, panic disorder, and chronic pain syndrome (Tr. 17), but that these impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

6

Before proceeding to the final two steps, the ALJ determined Plaintiff's RFC. The ALJ determined that Plaintiff has the RFC:

> to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he could not climb ladders, ropes, or scaffolds, otherwise could perform posturals occasionally; could reach and feel with the left upper extremity frequently but not constantly; would need to avoid concentrated exposure to hazards such as open machinery and unprotected heights; would not be required to operate or drive vehicles; would be limited to tasks that could be learned in thirty days or less involving no more than simple work related decisions with few workplace changes; and would not be required to read instructions or write reports in the course of his work.

(Tr. 20). In considering Plaintiff's entire medical record when making this evaluation, the ALJ acknowledged that Plaintiff's symptoms were caused by an underlying medically determinable physical or mental impairment. (Tr. 20). However, the ALJ questioned Plaintiff's credibility concerning the intensity and limiting effects of these symptoms. (Tr. 20).

After determining Plaintiff's RFC, the ALJ moved to the fourth step of the disability determination. The ALJ concluded that Plaintiff is capable of performing past relevant work as a compression thermal form molding machine operator because this work does not require the performance of work-related activities precluded by his RFC. (Tr. 23). In making this determination, the ALJ relied upon the testimony of a Vocational Expert ("VE"). (Tr. 23). The VE testified that an individual with Plaintiff's RFC could perform the job of a compression molding machine operator. (Tr. 63). He also informed the ALJ that his testimony was consistent with the *Dictionary of Occupational Titles* ("DOT"). U.S. Dep't of Labor, *Dictionary of Occupational Titles, Volume II*, (4th ed. rev. 1991) (Tr. 63).

Because the ALJ determined that Plaintiff was not disabled as defined in the Act, he did not proceed to the fifth and final step of the analysis.

### III.     Plaintiff's Argument for Remand or Reversal

While Plaintiff has organized his brief into two main arguments, there are numerous smaller arguments contained within these broad categories. In the interest of carefully examining the merits of each of Plaintiff's claim, the court has scrutinized Plaintiff's brief and found the following specific allegations: (1) the ALJ's determination that Plaintiff was able to return to his job as a compression thermal form molding operator is inherently contradictory to the ALJ's restriction that Plaintiff avoid exposure to open machinery (Pl.'s Mem. 7); (2) the physical RFC that the ALJ relied upon was created by a single decision-maker in violation of the Code of Federal Regulations (Pl.'s Mem. 8); (3) the ALJ should have developed the record to obtain medical input before deriving RFC findings (Pl.'s Mem. 12); (4) the ALJ erred by not reporting the findings of Dr. Alvin Tenchavez in his decision (Pl.'s Mem. 10); (5) the ALJ should have reported the consultative psychological examination performed by Dr. Bentley in his decision (Pl.'s Mem. 11); (6) the ALJ erred by rejecting the opinion of Andrea Nelson as conclusory and should have at least recontacted Ms. Nelson for further clarification (Pl.'s Mem. 11); and (7) the ALJ's restriction of essentially unskilled work with no written instructions barely addresses Plaintiff's intellectual limitations, and does not remotely address the mental limitations assessed by two impartial consultative examining sources. (Pl.'s Mem. 12).

### IV.     Standard of Review

The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Hand v. Callahan,* 125 F.3d 1436, 1439 (11th Cir. 1997). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it supported by substantial evidence." *Miles v.*

8

*Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997). The court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999).

Substantial evidence is more than a scintilla. The evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Hand* at 1440.

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as the finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066. There is no presumption that the Secretary's conclusions of law are valid. *Id.*

**V.    Discussion**

Plaintiff has organized his allegations into two broad arguments. The first argument alleges that the ALJ erred in failing to develop the record to obtain a physical medical source opinion.  (Pl.'s Mem. 7). First, Plaintiff claims that the ALJ's restriction of no exposure to open machinery is inconsistent with his finding that Plaintiff can return to work as a compression thermal form molding machine operator. (Pl.'s Mem. 7). Next, Plaintiff claims that because there

was no RFC by a physician of record, the ALJ should have further developed the record before determining his RFC. (Pl.'s Mem. 10). Concerning the mental aspect of Plaintiff's claim, he alleges broadly that the ALJ's mental RFC findings are based (at best) on exclusion of the evidence. (Pl.'s Mem. 11). Specifically under this broad allegation, Plaintiff argues that the ALJ should have explicitly included the findings of Dr. Bentley in his report. (Pl.'s Mem. 11). Plaintiff also argues that the ALJ was incorrect in rejecting the opinion of Andrea Nelson and that the ALJ at least had a duty to recontact Ms. Nelson to clarify her opinion. (Pl.'s Mem. 11). Finally, Plaintiff alleges that the ALJ's restrictions on his ability to work do not appropriately address his mental limitations. (Pl.'s Mem. 12).  The court addresses each argument in turn.

     **A.**    **The ALJ Did Not Fail to Develop the Record by Not Obtaining a Physical Medical Source Opinion.**

        **1.**    **The ALJ's Restriction of No Exposure to Open Machinery Is Consistent with His Determination That Plaintiff Can Return to His Previous Work as a Compression Thermal Form Molding Operator.**

Plaintiff first claims that the ruling of the ALJ is inherently contradictory because the ALJ ruled that he was capable of returning to his job as a compression thermal form molding operator while also noting that he was restricted from exposure to open machinery. (Pl.'s Mem. 7). Plaintiff's argument implies that work as a compression thermal form molding machine operator would inherently expose him to the hazards of open machinery. However, the requirements and hazards associated with this position in the *Dictionary of Occupational Titles* do not indicate exposure to any dangerous conditions associated with open machinery. *DOT*, 1991 WL 683478 (1991). The position does not require exposure to extreme heat or cold, vibrations, moving mechanical parts, electric shock, radiation, explosives, or toxic caustic chemicals. *Id*.

Also, the record demonstrates that the hypothetical that the ALJ posed to the VE specifically included a limitation regarding open machinery. The VE stated that Plaintiff could perform this job as a compression thermal form molding machine operator despite his limitations. (Tr. 63). The VE also testified that his conclusion was consistent with the DOT. (Tr. 63). VE testimony can provide substantial evidence to support an ALJ's decision that a claimant can return to a previous job. *Savor v. Shalala*, 868 F.Supp. 1363 (M.D.Fla. 1994). Therefore, for these reasons, there is no inherent contradiction in the ALJ's determination that Plaintiff could return to his job as a compression thermal form molding machine operator and the restriction to avoid open machinery.

> 2. **The ALJ Fully Developed the Record Before Deriving an RFC Despite the Lack of an RFC by a Physician of Record.**

Plaintiff's brief makes numerous assertions concerning the ALJ's failure to fully develop the record. The court has grouped these allegations into three subsections in order to address all of the arguments in a more structured manner.

First, Plaintiff urges that a physical RFC performed only by a single decision maker violates the Code of Federal Regulations. Second, Plaintiff argues that the ALJ erred by not developing the record and ordering a consultative examination. Finally, Plaintiff contends that the ALJ erred by not reporting the findings of Dr. Tenchavez.

> a. **The Physical RFC Performed Only by a Single Decision Maker Without a Medical Consultant Does Not Violate Code of Federal Regulations.**

Plaintiff argues that while a Medical Source Opinion ("MSO") is not required for the ALJ to make RFC findings, it is still required at the State Agency level for disability determinations to be made by both a medical consultant and the disability examiner. (Pl.'s Mem.

8). Plaintiff states that the only time that a disability examiner makes this determination without a medical consultant is when there is no medical evidence to examine and the individual refuses to attend a consultative examination. (Pl.'s Mem. 8).

Title 20 § 404.1615(c)(1) and (2) of the Code of Federal Regulations seem to support Plaintiff's assertion. This section of the Code, which provides regulations about making disability determinations, states that such determinations will be made by both a State agency medical or psychological consultant and a State agency disability examiner. 20 C.F.R. § 404.1615(c)(1). The Code allows the determination to be made solely by a disability examiner only when there is no medical evidence to be evaluated and the individual fails or refuses, without good reason, to attend a consultative examination. 20 C.F.R. § 404.1615(c)(2). It also provides an exception when the claim is adjudicated under the quick disability determination process or as a compassionate allowance, and the initial or reconsidered determination is fully favorable to the claimant. 20 C.F.R. § 404.1615(c)(3). None of these situations exist in this case. Therefore, considered by itself, § 404.1615(c)(2) requires both a State agency medical or psychological consultant and a State agency disability exam.

However, Plaintiff's argument ignores the more recent 20 C.F.R. § 404.906 (2007). This regulation outlines a plan to test modifications to the disability determination procedures. Title 20 C.F.R. § 404.906 states that it will institute these new procedures "[n]otwithstanding any other provision in this part or part 422 of this chapter." 20 C.F.R. § 404.906(a).  Also, Alabama is one of the states in which these modifications are being tested. 71 Fed. Reg. 45,890 (August 10, 2006). Therefore, the provisions in 20 C.F.R. § 404.906 take precedence over those in 20 C.F.R. § 404.1615.

One of the modifications put into effect by these new regulations is the Single Decision Maker Model. Under this model, a single decision maker will make the disability determination and may also determine if other conditions for entitlement to benefits based on disability are met. Under this plan, a signature from a medical or psychological consultant is not required on the disability determination forms. 20 C.F.R. § 404.906 (2007).

Furthermore, while the findings by the ALJ must be supported by substantial evidence, the Eleventh Circuit does not require an RFC from a physician for an ALJ to make his determination. *Langley v. Astrue*, 777 F.Supp.2d. 1250, 1258 (N.D.Ala. 2011). Therefore, the fact that the physical RFC in this case was generated and signed by a single decision maker disability specialist does not violate any regulations.

> **b.    The ALJ's RFC Findings Were Based on Substantial Evidence and No Error Was Made by Not Ordering a Consultative Examine.**

Plaintiff next argues that the ALJ should have further developed the record to obtain medical input before making RFC findings. (Pl.'s Mem. 12). This argument relies heavily on the supposed impropriety of the physical RFC by the single decision maker. The court has already concluded that the reliance on the RFC was proper; however, even if the physical RFC by the single decision maker was not proper, the ALJ still based his RFC findings on substantial evidence.

The ALJ's RFC assessment must consider all of the relevant evidence to determine the most that a claimant can do despite any limitations. 20 C.F.R. § 404.1545(a)(1) (2010). It is the ALJ's responsibility to assess the claimant's RFC at the administrative hearing. 20 C.F.R. § 404.1546(c) (2010). The claimant is generally responsible for providing evidence for the ALJ to consider when making his RFC finding. 20 C.F.R. § 404.1545(a)(3) (2010). However, it is the

ALJ who is responsible for developing the claimant's complete medical history. This responsibility includes arranging consultative examinations if necessary and assisting the claimant in obtaining medical records from his own medical sources. *Id*. A consultative examination should be ordered if one is needed to make an informed decision. *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984). However, if no physician recommends an additional consultation and the record is sufficiently developed for the ALJ to make a determination, then the failure to order a consultative examination is not error. *Good v. Astrue*, 240 Fed.Appx. 399, 404 (11th Cir. 2007).

In this case, no physician recommended an additional consultation and the ALJ considered the entire record in reaching his opinion. The ALJ first discussed the testimony of Plaintiff during the hearing. He found some of Plaintiff's testimony to be inconsistent. (Tr. 21). The ALJ also found some of Plaintiff's responses to be evasive or vague. (Tr. 21). This question of credibility influenced the ALJ's determination regarding the "intensity, persistence, and limiting effects" of Plaintiff's symptoms. (Tr. 21).

The ALJ also discussed Plaintiff's medical records. When discussing Plaintiff's hospital visits since the original car accident, the ALJ noted that when Plaintiff was released from the hospital that his injuries had been treated with no subsequent complications. (Tr. 21-22). He also discussed that in subsequent visits for medical treatment that the medical tests did not reveal any substantial fractures or soft tissue damage that would substantiate Plaintiff's asserted level of impairment. (Tr. 22). The ALJ even commented on four visits to the hospital for reasons unrelated to Plaintiff's car crash injuries. He noted that during these visits Plaintiff did not seek treatment or advice for his existing injuries. (Tr. 22). Therefore the record was appropriately developed and it was not necessary for the ALJ to obtain a consultative examination.

14

          c.        **The ALJ Was Not Required to Report the Findings of Dr. Alvin Tenchavez.**

Plaintiff contends that the ALJ's failure to specifically mention the assessment performed by Dr. Tenchavez on August 8, 2007 is another example of him not properly developing the record. (Pl.'s Mem 10, Tr. 227). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). It is enough that an ALJ's decision is not a broad rejection that would lead a court to conclude that the ALJ did not consider the claimant's medical condition as a whole before making a decision. *Id*. Here, it is clear that the ALJ considered Plaintiff's entire medical history. Also, the information from Dr. Tenchavez's examination was largely summarized in Plaintiff's physical RFC. (Tr. 236). That physical RFC was reported in the record and considered by the ALJ. (Tr. 22-23). Therefore, it was not error for the ALJ to not specifically refer to the examination performed by Dr. Tenchavez.

    **B.**       **The ALJ's Mental RFC Findings Are Based on Substantial Evidence and a Fully Developed Record.**

        **1.**       **The ALJ Did Not Fail to Fully Develop the Record by Not Specifically Including the Opinion of Dr. Bentley.**

Plaintiff argues that the ALJ's mental RFC findings were based, at best, on exclusion of the evidence. (Pl.'s Mem. 11). Specifically, Plaintiff argues that the ALJ erred by not reporting the consultative psychological examination performed by Dr. Bentley on August 9, 2007. (Pl.'s Mem. 11). This argument is off the mark for reasons similar to Plaintiff's argument concerning the physical assessment performed by Dr. Tenchavez. Again, the ALJ is not required to specifically refer to every piece of evidence as long as his decision is not a broad rejection of the

evidence, *Dyer* at 1211, and the opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

In this case, the ALJ did not broadly reject Dr. Bentley's assessment but instead based his decision on the evidence as a whole. Dr. Estock's assessment noted the core findings of Dr. Bentley that Plaintiff was alert, oriented, and that his memory was intact. (Tr. 231, 254). The mental RFC also noted Dr. Bentley's diagnosis of "major depression, recurrent, moderate to severe, and panic disorder." (Tr. 254). Dr. Estock took this information into account when determining Plaintiff's mental RFC and the extent to which Plaintiff's impairments limited his ability to work. This assessment by Dr. Estock, which includes the findings of Dr. Bentley, was reported by the ALJ in his decision. (Tr. 23).

The ALJ also considered other evidence concerning Plaintiff's limitations as a result of his mental impairments. The ALJ reported the mental consultative examination performed by Dr. Rogers on May 7, 2009. (Tr. 22, 333-41). In this examination, Dr. Rogers found that Plaintiff was able to work (although with some restrictions and conditions). (Tr. 337). His diagnosis is consistent with that of Dr. Bentley. He determined that Plaintiff suffered from pain related to his psychological and general medical condition, depressive disorder, and anxiety. Dr. Rogers also diagnosed a reading disorder, a mathematics disorder, a learning disorder, and a disorder of written expression. (Tr. 337). Despite these limitations, Dr. Rogers determined that Plaintiff was capable of being cooperative with peers and supervision, of maintaining a routine work cycle in a well-structured work situation, and that he possessed good motivation. (Tr. 337). The ALJ took these and other limitations set forth by Dr. Rogers into account when determining Plaintiff's RFC. (Tr. 22). The ALJ's findings recognized that Plaintiff is limited to tasks that (1) can be learned in thirty days or less, (2) involve no more than simple work-related decisions with few

16

workplace changes, and (3) do not involve a requirement that he read instructions or write reports in the course of his work. (Tr. 22). These limitations and the discussion of the reports of both Dr. Estock and Dr. Rogers show that the ALJ did not exclude evidence from the record when determining Plaintiff's RFC.

> ###   2.   The ALJ Gave Appropriate Weight to the Opinion of Andrea Nelson and Did Not Err by Not Recontacting Ms. Nelson for Further Clarification.

Plaintiff claims that the ALJ inappropriately rejected as conclusory the evaluation conducted by Andrea Nelson on May 19, 2009. (Pl.'s Mem. 11, Tr. 343).  Although Plaintiff contends that the ALJ rejected this evidence after determining it was conclusory (Pl.'s Mem. 11), that argument is not supported by the record. In reality, the ALJ did not "reject" the evidence, but merely concluded that because of the conclusory nature[1] of Ms. Nelson's opinion that it deserved "little evidentiary weight." (Tr. 22).

After careful review, the court finds the ALJ correctly decided to give Ms. Nelson's opinion "little evidentiary weight." (Tr. 22). Even opinions from treating physicians, whose opinions are normally given substantial or considerable weight, are given very little evidentiary weight if the opinion is conclusory. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("we note that we are concerned here with the doctor's evaluations of [claimant's] condition and the medical consequences thereof, not their opinions of the legal consequences of his condition."). Ms. Nelson was not a treating or

---

[1] Plaintiff does not dispute the fact that the opinion was conclusory; he only claims that it should not have been rejected or that the ALJ should have contacted Ms. Nelson for further clarification pursuant to 20 C.F.R § 404.1512(e).  (Pl.'s Mem. 11).

even a consulting physician. Therefore her conclusory opinion about Plaintiff's ability to work was appropriately given little evidentiary weight.

Plaintiff next claims that the ALJ should have contacted Ms. Nelson for clarification of her opinion pursuant to 20 C.F.R. 404.1512(e). (Pl.'s Mem. 11). Section 404.1512(e) provides that every reasonable effort will be made to obtain evidence from the claimant's medical sources. However, "[i]n evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11ᵗʰ Cir. 1995). The likelihood of unfair prejudice may arise if there is an evidentiary gap that "the claimant contends supports her allegations of disability." *Id.* At 936 n.9.

Here no such evidentiary gap exists. Although there are parts of the letter from Ms. Nelson that were not conclusory concerning Plaintiff's psychological state—specifically, his hesitation to ride in automobiles and how this fear affects his life (Tr. 343), substantial evidence concerning these issues was already contained in the record and an additional opinion from a non-medical source would not have influenced the ALJ's decision. The ALJ relied upon the medical opinions of Dr. Bentley (Tr. 230-33), Dr. Estock (Tr. 242-59), and Dr. Rogers (Tr. 333-41) to determine Plaintiff's psychological conditions and the limitations that result from these conditions. Further clarification from Ms. Nelson would not have changed this determination. Therefore, the ALJ did not err by not recontacting Ms. Nelson.

### 3.   The ALJ Appropriately Addressed Plaintiff's Intellectual and Mental Limitations in His RFC.

Finally, Plaintiff argues broadly that the ALJ's restriction to essentially unskilled work with no written instructions barely addresses his intellectual limitations, and does not remotely

18

address the mental limitations assessed by two impartial consultative examining sources. (Pl.'s Mem. 12).  Although Plaintiff makes this assertion, he does not elaborate or cite any authority to support it. Issues raised in a perfunctory manner, without supporting arguments and/or citation to authorities, are generally deemed to be waived. *Continental Tech. Serv., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991). However, in order to thoroughly analyze every issue, the court will still examine the claim.

The ALJ explained that while he did believe Plaintiff's anxiety to be a severe impairment, he did not find it to be debilitating. (Tr. 22). He noted that Plaintiff had only sought medication for his anxiety shortly before the hearing and that the anxiety did not prevent Plaintiff from a social life that includes visiting regularly with friends and family. (Tr. 22). The ALJ ultimately concluded that "the nature and extent of treatment in this case simply belie [Plaintiff's arguments regarding] debilitating anxiety." (Tr. 22). The ALJ and other reports had already called Plaintiff's credibility into question. (Tr. 21-22, 239). This court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Therefore this court cannot question the ALJ's conclusions concerning the severity of Plaintiff's anxiety.

Also, Plaintiff's intellectual and mental limitations were considered by the ALJ in his determination of his Global Assessment of Functioning ("GAF") score. (Tr. 22). While making this assessment, Dr. Rogers assessed Plaintiff's pain disorder, depressive disorder, anxiety disorder, reading disorder, mathematics disorder, learning disorder, and disorder of written expression. Despite all of these impairments, Dr. Rogers still concluded that Plaintiff possessed a GAF score of 53. (Tr. 337). This score reflects only moderate symptoms. DSM-IV-TR, (4th Edition, 2000). The ALJ considered this information when determining Plaintiff's work

restrictions and decided to further restrict him to tasks that can be learned in thirty days or less involving no more than simple work-related decisions with few workplace changes, and no requirement that he read instructions or write reports in the course of his work. (Tr. 22). Therefore, the ALJ did indeed address Plaintiff's intellectual and mental limitations when determining his RFC.

**VI.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum will be entered.

**DONE** and **ORDERED** this _____16th_____ day of August, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE